BARKETT, Justice.
This disciplinary proceeding is before us upon complaint of The Florida Bar and the referee’s report. Respondent has filed a petition for review. We have jurisdiction pursuant to article V, section 15, Florida Constitution.
Respondent was the subject of three separate investigations which resulted in findings of probable cause by a duly constituted grievance committee of The Florida Bar. After a hearing, the referee submitted his report recommending that respondent be found guilty of various violations of the Code of Professional Responsibility and the Integration Rule of The Florida Bar, and that he be disbarred.
In Count I, the Bar charged respondent with violating several disciplinary rules pertaining to conflicts of interest and secrets of clients. Initially, respondent represented a wife in a dissolution of marriage action. He obtained a final judgment on her behalf which provided for child support as well as other relief. Respondent continued to represent the wife, filing a motion to modify the final judgment and a motion for contempt wherein various arrearages in child support were alleged. Approximately two years later, respondent commenced proceedings against his former client on behalf of her ex-husband, seeking a reduction in child support payments. These payments were part of the very relief sought and obtained by respondent on behalf of the wife in the original dissolution proceed *1102 ings. Respondent’s former client did not consent to respondent’s representation of her former husband and indicated that such consent would not have been given if sought by respondent.
In Count II, the Bar charged that respondent coerced an agreement from a former client to pay damages on a claim which had no legal basis. Respondent was retained by Michael Patrick Field to enter a plea of guilty to a charge of driving while intoxicated. Field thereafter attempted to withdraw the plea by a letter to the trial court alleging “the incompetence of [his] lawyer.” Respondent learned of the letter and demanded that Field pay him $1,000 as compensation for the “slanderous” letter. Field consented to pay respondent $500 in weekly installments of $50 because, as he testified, he felt threatened by respondent. After obtaining an attorney, Field stopped making payments, and respondent filed suit against Field to enforce the terms of the agreement. Field prevailed in the suit and additionally recovered his costs and attorney’s fees. The trial court noted that respondent’s complaint against Field raised no justiciable issue of law or fact since the alleged defamatory statement was made in a pleading and was thus “absolutely privileged from any claim that it was defamatory.”
In Count III, the Bar charged that respondent misrepresented material facts in a sworn pleading in order to obtain the relief sought. Cadet Joseph K. Barbara had retained respondent when he was dismissed from West Point. Respondent filed a sworn motion before a federal court requesting the issuance of a temporary order restraining West Point from dismissing the cadet. The pleading contained the representation that West Point had no objection to the issuance of such an order. The federal judge entered the order on the basis of respondent’s misrepresentation of the position of the West Point authorities.
Upon finding respondent guilty of all charges, the referee recommended disbarment, stating:
1. The cumulative guilt of the three different transgressions indicated a gross callousness and indifference to the entire Code of Professional Responsibility-
2. In Count I, he must be presumed to have divulged secrets of his client’s to the client’s adversary.
3. In Count II, he outrageously and successfully pressured his client to wrongfully agree to pay him money when his client had no legal obligation to do so. Certainly moral extortion if nothing else.
4. He deliberately lied under oath to a Federal Judge who relied upon such falsehood in issuing the order. Certainly a lawyer can do little more culpable and destructive to the court system. The example set by Respondent must be dealt with harshly to prevent those considering such conduct in the future.
We note initially that although respondent contests the findings and recommendations of the referee, he did not see fit to file the appropriate briefs required by Florida Rule of Appellate Procedure 9.210. In spite of this, we have chosen to consider the documents he has submitted as his arguments contesting the referee’s findings.
Respondent’s “arguments” are perhaps more illuminating than the testimony before the referee. Respondent justifies representing the husband of his former client because:
[The wife] knew that her former husband was unable to maintain the child support payments, and further knew that Mr. Katz was trying to obtain a stipulation for a reduction of the support from both parties that would seek a just and fair resolution of the matter which had apparently gotten out of hand during the four years + that they had been divorced— and, for the court’s information, Judge Edward Rogers at the circuit court level had clearly stated at the final hearing that it appeared that the payments were too high and that the Wife should consider either a reduction of the payments *1103 and/or a removal of the children from private school to avoid such a large child support payment....
Respondent explains his actions in the Field case by stating:
[I]n the Field case, his statements were never privileged as noticed by the following, to wit: he lied when he stated that Scott Katz was incompetent in the handling of his case and that he merely stated the statements to Judge Carlisle due to the fact that he could not afford the price of probation at the time; and for the court’s information, malice could have been shown and is still shown today wherein both he and his girlfriend state that he has stopped drinking, that he does not drink and drive, and that he is a carefull [sic] driver even though he recently drove his vehicle into a true [sic] at a high rate of speed in excess of 60 miles per hour and his girlfriend’s right leg was severely crushed in the terrible accident.
He responds to the charges that he misrepresented a fact in a pleading in the federal court by stating:
As the court can see from the attached papers, Gregory Gay and Col. Sims,* the governmental officials who were supposedly helping us out to reinstate the cade [sic] into West Point, were the ones who suggested the federal suit, the TRO, and clearly stated that it was our only recourse when in fact the administrative remedies were not duly exhausted as required by case law in the area. Thus, the Respondent prays that the court takes a close look at the attached memorandum in support of the Defendant’s case which clearly shows how GAY AND SIMS mislead [sic] the Respondent into believing the only recourse for him and his client were to file the federal suit and seek a TRO from the federal court; on. the contrary, the only recourse was to file the appropriate petition with the Army Board for Correction of Military Records. IF SIMS AND GAY WOULD HAVE TOLD THE UNDERSIGNED ATTORNEY ABOUT THE ARMY BOARD AND THAT THE ADMINISTRATIVE REMEDIES HAD NOT BEEN DULY EXHAUSTED, THE UNDERSIGNED ATTORNEY WOULD HAVE NEVER SOUGHT THE TRO AND/OR OTHER RELIEF IN FEDERAL COURT. Thus, as the court can see, the “blind” trust which I obtained from SIMS AND GAY was both misleading and detrimental to both my client’s case and me. And for the court’s information, no objection to the entry of the TRO was ever given to me by the government until after the court entered it; and it would be absurd for the government to object to something that was basically set up by them, to wit: (i.e.: as noted earlier, the undersigned could not properly obtain a TRO even with the military’s formal consent due to the fact that the administrative remedies had not been exhausted[) ].
We approve the referee’s findings of guilt on Count I of the Bar’s complaint and find that respondent violated Disciplinary Rule 1-102(A)(5) (a lawyer shall not engage in conduct contrary to the administration of justice); Disciplinary Rule 4-101(A) and (B) (a lawyer shall not knowingly use a client’s confidence or secret to the advantage of another without full disclosure), Disciplinary Rule 5-105(A) and (B) (a lawyer shall decline proffered employment if a client will be or is likely to be adversely affected), and Disciplinary Rule 9-101 (a lawyer shall avoid even the appearance of impropriety).
We approve the referee’s findings of guilt on Count II and find that respondent violated Florida Bar Integration Rule, article XI, Rule 11.02(3)(a) prohibiting conduct contrary to honesty, justice, or good morals.
We approve the referee’s findings of guilt on Count III, finding that respondent violated Disciplinary Rule 1-102(A)(1) (a lawyer shall not violate a discipline rule); Disciplinary Rule 1-102(A)(3) (a lawyer shall not engage in illegal conduct involv *1104 ing moral turpitude); Disciplinary Rule 1-102(A)(4) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation); Disciplinary Rule 1-102(A)(5) (a lawyer shall not engage in conduct that is prejudicial to the administration of justice); Disciplinary Rule 1-102(A)(6) (a lawyer shall not engage in any conduct that adversely reflects on his fitness to practice law); Disciplinary Rule 7-102(A)(5) (a lawyer shall not knowingly make a false statement of law or fact in representing a client); and Florida Bar Integration Rules 11.02(3)(a) and (b) (a lawyer shall not commit acts contrary to honesty, justice, good morals, or commit a crime).
Moreover, this is not the first time that respondent has been guilty of a violation of the disciplinary rules. He received a private reprimand in September 1984 for threatening criminal prosecution solely to obtain an advantage in a civil matter. Respondent’s transgressions, along with his total indifference to the entire Code of Professional Responsibility, and the complete incompetence demonstrated herein and throughout these proceedings mandate his immediate removal from the ranks of The Florida Bar. Accordingly, we approve the recommendation of the referee, and disbar respondent effective thirty days from the filing of this opinion.
Judgment for costs in the amount of $4,086.45 is entered against respondent, for which sum let execution issue.
It is so ordered.
BOYD, C.J., and ADKINS, OVERTON, MCDONALD, EHRLICH and SHAW, JJ., concur.

We note that neither Gay nor Sims were lawyers. Gay was an assistant to Senator Paula Hawkins who spoke to West Point officials (including Sims) about Barbara’s dismissal.